IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


**TOMAS LOPEZ,**

      **Plaintiff,**

**v.**                                          **Case No.:**

**THE VILLAS AT UNIVERSITY**
**SQUARE CONDO. ASS'N, INC.,**
**VALENTIN ESCRIBANO,**
**PEDRO PRIETO and**
**VTE CONSULTING, LLC.**


      **Defendants.**
_____/


## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, DAMAGES AND DEMAND FOR JURY TRIAL


    **COMES NOW** Plaintiff, Tomas Lopez ("Plaintiff Lopez"), by and through

counsel, Disability Rights Florida, Inc. and Neil Henrichsen of Henrichsen Law

Group, and files this Complaint against Defendants The Villas at University

Square Condominium Association, Inc. (VILLAS ASSOCIATION), Pedro Prieto

(PRIETO), Valentin Escribano (ESCRIBANO) and VTE Consulting, LLC (VTE),

(collectively "Defendants") seeking an award of monetary damages and

declaratory and injunctive relief against all Defendants, jointly and severally, as

relief for their prohibited and unlawful conduct described in detail herein that violated and continues to violate Plaintiff Lopez's civil rights to not be discriminated against on account of his disabilities which rights are afforded to him by the Fair Housing Amendments Act, 42 U.S.C. §§ 3601 - 3619 ("Fair Housing Act" or "FHA") and for breach of contract against Defendants VILLAS ASSOCIATION, PRIETO and ESCRIBANO.

## JURISDICTION AND VENUE

1. This is an action filed against VILLAS ASSOCIATION, PRIETO, and ESCRIBANO, jointly and severally, for breach of contract and against VILLAS ASSOCIATION, PRIETO, ESCRIBANO and VTE for injunctive relief and monetary damages for their violation of Plaintiff Lopez's civil rights as guaranteed by the federal Fair Housing Act.

2. Plaintiff Lopez seeks to redress the unlawful deprivation of his right to fair housing established under the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601 et seq., based on the unlawful and discriminatory retaliation against him by VILLAS ASSOCIATION, PRIETO, ESCRIBANO and VTE on account of his having prosecuted an administrative complaint for housing discrimination and he seeks relief for the breach of the contract executed by VILLAS ASSOCIATION, PRIETO and ESCRIBANO that was intended to settle his prior administrative claim for housing discrimination.

3.  This Court has subject matter jurisdiction over Plaintiff's federal claims
    against the Defendants and of this action pursuant to 42 U.S.C. § 3613(a)
    and (c) and pursuant to 28 U.S.C. §§ 1331, 2201-2202, and 1343(a)(3) and
    (4).

4.  This Court has supplemental jurisdiction over Plaintiff's breach of contract
    claims pursuant to 28 U.S.C. §1367(a) because the underlying facts that
    form the basis of the Plaintiff's breach of contract claims are intertwined
    with and directly related to the federal claims presented in this action such
    that the breach of contract claims form part of the same case or controversy.
    Specifically, the contract which Plaintiff Lopez alleges has been breached
    was a negotiated settlement meant to fully resolve a prior administrative
    complaint for housing discrimination filed by Plaintiff Lopez against
    Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO.
    Further, Plaintiff Lopez's claim for discriminatory retaliation is based on
    the behavior of Defendants VILLAS ASSOCIATION, PRIETO,
    ESCRIBANO and VTE taken in response to his administrative complaint
    for housing discrimination and the settlement thereof.

5.  Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because all
    Defendants conduct business in this District and because all the unlawful

conduct, acts and omissions described herein and that give rise to Plaintiff

Lopez's action against Defendants occurred in this District.

## PARTIES

6. Plaintiff Lopez is a 65-year-old man with disabilities[1] as that term is defined

by the federal Fair Housing Act.

7. Plaintiff Lopez has physical impairments including chronic obstructive

pulmonary disease, mobility impairments, and a traumatic brain injury

which substantially limit his breathing and mobility.

8. Plaintiff receives Social Security Disability and has been issued a handicap

parking permit as the result of his physical disabilities.

9. Set forth in this paragraph is a true and correct photograph of Plaintiff Lopez

with his cane and portable oxygen:



---

[1] The term "disability" or "disabled" is synonymous with the term "handicap" as defined in 42 U.S.C. § 3602(h). Plaintiff Lopez uses the term "disability" or "disabled."

10. Plaintiff Lopez lives in a 240-unit condominium community called The Villas at University Square Condominium ("the subject property").

11. Defendant VILLAS ASSOCIATION is a Florida not-for-profit corporation created pursuant to and governed by Chapter 718 (2023) of the Florida Statutes with a principal address of 1840 West 49th Street, Suite 233, Hialeah, FL 33012.

12. Residents of the subject property, including Plaintiff Lopez, are subject to the governing documents of VILLAS ASSOCIATION including the Declaration of Condominium recorded in the Miami Dade Official Record at Book 11945 Page 2464 and to the By-Laws of the VILLAS ASSOCIATION.

13. Defendant PRIETO is the president of the Board of Directors of VILLAS ASSOCIATION and Plaintiff Lopez's next-door neighbor.

14. Defendant PRIETO is an agent of Defendant VILLAS ASSOCIATION.

15. Exclusive Property Management, Inc. (Exclusive Management) is a Florida for profit company with a principal address of 175 Fontainebleau Blvd., Suite 2G1, Miami, FL 33172.

16. Until approximately May of 2023, Exclusive Management contracted with Defendant VILLAS ASSOCIATION to provide management services including implementing the direction of the Board of Directors of VILLAS

ASSOCIATION, reviewing and responding to requests for reasonable
accommodation, issuing notices for violation of governing documents,
complying with contracts regarding the subject property, and facilitating
other day-to-day operations within the subject property.

17. During this time, Defendant ESCRIBANO was employed by Exclusive
Management as the on-site property manager for VILLAS ASSOCIATION.

18. Defendant VTE is a Florida for profit company with a principal address of
1840 West 49 Street, Ste 23, Hialeah, FL 33012.

19. Defendant ESCRIBANO is the president and CEO of Defendant VTE as
reflected in the records maintained by the Florida Department of State
Division of Corporations and Defendant ESCRIBANO's LinkedIn account.

20. Defendant VTE took over for Exclusive Management as the property
management company for Defendant VILLAS ASSOCIATION in May
2023.

21. Defendants VILLAS ASSOCIATION and VTE are engaged in a joint
venture as described in a management agreement.

22. The management agreement between VILLAS ASSOCIATION and VTE
describes a community interest in the performance of a common purpose,
joint control or right of control, a joint proprietary interest in the subject
matter, a right to share profits and a duty to share in losses.

23. One of the purposes of the joint venture between VILLAS ASSOCIATION and VTE is the day-to-day management of VILLAS ASSOCIATION including consideration of and response to requests for reasonable accommodation, compliance with contracts concerning the operation of the property, maintenance activities, and implementation of policies and rules applicable to residents of the subject property.

24. In the alternative, Defendant VTE is an agent of Defendant VILLAS ASSOCIATION and acts in accordance with the obligations contained within a management agreement.

## STATEMENT OF FACTS AND LAW

25. At all times relevant, Plaintiff Lopez is and was disabled as defined by the FHA.

26. Plaintiff Lopez has physical impairments including chronic obstructive pulmonary disease, mobility impairments, and a traumatic brain injury which substantially limit his breathing and mobility.

27. Due to the above-referenced disabilities, Plaintiff Lopez has difficulty navigating uneven surfaces, climbing stairs, and engaging in similar activities.

28. Due to his chronic obstructive pulmonary disease and trachea tube, Plaintiff Lopez uses a portable oxygen tank and suction machine and must bring these items with him when he leaves the subject property.

29. At all times relevant to this action, all Defendants had actual knowledge of Plaintiff Lopez's obvious and apparent physical disabilities including his mobility impairments, respiratory impairments, use of a cane, and use of portable oxygen.

30. In May 2004, Plaintiff Lopez purchased Unit 2408 at the subject property.

31. In September 2006, Plaintiff Lopez sold Unit 2408 to his son and has since remained as a tenant.

32. As a resident of the subject property, Plaintiff Lopez was issued parking decals for his and his family's use.

33. At the time Plaintiff Lopez purchased Unit 2408, the area in front of the unit had a tiled walkway and concrete ramp that provided an accessible path to his home that he could navigate with his cane and portable oxygen tank. The inset photograph is an accurate reflection of the area outside Plaintiff Lopez's home in June 2021. Plaintiff Lopez's parking space is to the right of the picture.



34. On June 14, 2021, Defendant VILLAS ASSOCIATION sent a letter, signed by Defendant ESCRIBANO, to Plaintiff Lopez. The letter stated that "[t]he Board of Directors and the management company are calling your attention…[a]s per the picture enclosed, please see where your front entrance patio area finishes. There is an extension with tiles and cement and a tree upon common area. The association will remove this up until where your front entrance patio tiles end. It will be replaced with grass." A true and exact copy of the June 14, 2021 letter is attached hereto as Exhibit A and marked as Bates TL001.

35. On June 4, 2021, promptly following his receipt of the letter, Plaintiff Lopez called Defendant ESCRIBANO (then employed by Exclusive Management) and made his first request for reasonable accommodation. To wit, Plaintiff Lopez explained that, because of his physical disabilities,

including mobility and respiratory impairments, he needed the tiled

walkway and concrete ramp to safely access his home, and he asked that

these accessible features not be removed from outside his unit.

36. Defendant ESCRIBANO told Plaintiff Lopez that his request for reasonable

accommodation had been transmitted to the Board of Directors for

Defendant VILLAS ASSOCIATION.

37. On June 19, 2021, the tiled walkway and concrete ramp were destroyed and

replaced with grass and uneven asphalt.

38. The inset photographs are an accurate reflection of the area in front of

Plaintiff Lopez's home immediately after the removal of the tiled walkway

and concrete ramp:





39. The destruction of the concrete ramp and tiled walkway made it difficult and dangerous for Plaintiff Lopez to access his home at the subject property.

40. On January 11, 2022, Plaintiff's counsel submitted Plaintiff's first request for reasonable modification seeking the restoration of the accessible path to Plaintiff Lopez's home. Specifically, Plaintiff Lopez asked that new asphalt be poured next to his parking space so that he could exit his vehicle and reach his home without having to traverse the grass or uneven asphalt. A true and correct copy of the January 11, 2022 letter is attached hereto as Exhibit B and marked as Bates TL002-TL004.

41. Plaintiff then became aware on December 22, 2021 that Defendant VILLAS ASSOCIATION planned to plant new trees in front of his unit so he also requested, as a reasonable accommodation, that VILLAS ASSOCIATION

"delay installation of any trees to permit a discussion about whether the placement of additional trees would further impair [Plaintiff Lopez's] ability to access his home."

42. Thereafter, Defendant VILLAS ASSOCIATION planted a group of three palm trees immediately next to Plaintiff Lopez's parking space that blocked his car door and further impeded his ability to reach his home safely.

43. On February 3, 2022, Plaintiff's counsel requested that Defendant VILLAS ASSOCIATION move the palm trees and grant his prior requests to restore to accessible path to his home "to limit the distance he must walk and allow him to exit his vehicle and navigate to his home while avoiding uneven asphalt and grass." A true and correct copy of the February 3, 2022 letter is attached hereto as Exhibit C and marked as Bates TL005-TL007.

44. On April 13, 2022, Plaintiff filed an administrative complaint for housing discrimination with the United States Department of Housing and Urban Development. This complaint was referred to the Florida Commission on Human Relations (FCHR) for investigation.

45. FCHR's investigation concluded on April 19, 2024 when FCHR issued a Determination in Plaintiff Lopez's case.

46. After the conclusion of FCHR's investigation, Plaintiff Lopez filed a Petition for Relief with the Division of Administrative Hearings (DOAH)

(Case No. 24-001925) against Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO along with Exclusive Management.

47. A settlement was reached through the DOAH alternative dispute resolution process on July 18, 2024. A true and exact copy of the Settlement Agreement and Mutual Release (the "DOAH Settlement Agreement") executed by VILLAS ASSOCIATION, PRIETO, and ESCRIBANO is attached hereto as Exhibit D and marked as Bates TL008-TL020.

48. The DOAH Settlement Agreement is a binding contract in that:

    a. Plaintiff Lopez made an offer to settle his pending administrative complaint;

    b. VILLAS ASSOCIATION, PRIETO and ESCRIBANO accepted Plaintiff Lopez's offer;

    c. The parties, with the assistance of their respective attorneys and the assigned Alternative Dispute Resolution judge, engaged in negotiations regarding the language of the DOAH Settlement Agreement and there was a meeting of the minds with respect to all terms of the agreement;

    d. The contract provided for consideration including Plaintiff Lopez's agreement to release VILLAS ASSOCIATION, PRIETO and

ESCRIBANO and their agreement to perform the acts required by
sections 2A, 2B and 2D of the DOAH Settlement Agreement;

e.  The terms of the DOAH Settlement Agreement are clear and specific;
and

f.  None of the terms of the DOAH Settlement Agreement are
unconscionable or otherwise contrary to public policy.

49. At the time the DOAH Settlement Agreement was executed, Defendant
VTE was the property management company for VILLAS ASSOCIATION
and Defendant ESCRIBANO was the on-site property manager for
VILLAS ASSOCIATION.

50. Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO have
breached the DOAH Settlement Agreement by failing to perform their
obligations pursuant to the contract as more fully explained below.

51. Plaintiff Lopez alerted Defendants VILLAS ASSOCIATION, PRIETO, and
ESCRIBANO of their failure to comply with the DOAH Settlement
Agreement through an August 21, 2024 letter to their counsel.

52. Section 2.A.1 of the DOAH Settlement Agreement provides that within 60
days of execution, and at no cost to Plaintiff Lopez, Defendants VILLAS
ASSOCIATION, PRIETO, and ESCRIBANO must:

      i. "[h]ave an asphalt apron poured in the area adjacent to [Plaintiff

      Lopez's] parking space that is identified in the attached Exhibit

      A as "New Asphalt Apron." The New Asphalt Apron shall be at

      least 4 feet wide and shall extend from the outer edge of the

      white parking stripe that is identified as "Stripe 1" in [] Exhibit

      A and shall extend from the tiled patio in front of Lopez's unit

      to at least the location marked as "End of Apron" on Exhibit

      A…[Defendant] understand[s] and agree that the installation of

      the New Asphalt Apron will necessitate removal of at least a

      portion of the grassy area in front of [Plaintiff] Lopez's

      home…[Defendant] may remove the entire grassy area and

      replace it with asphalt if desired…[t]he work required…will be

      done by a licensed third-party contractor. [Defendant] will

      instruct the contractor that the asphalt is to be smooth and

      level."

53. Section 2.A.2 of the Settlement Agreement provides that Defendant

VILLAS ASSOCIATION "reserves the right to remove the entire island

and place smooth and continuous asphalt between the parking spaces. If the

[VILLAS ASSOCIATION] remove[s] the entire island it will not create an

additional parking space due to the Island Removal and [Plaintiff] Lopez's parking space will meet the requirements stated herein."

54. The inset photograph is an accurate representation of the diagram that is attached to the DOAH Settlement Agreement as Exhibit A (DOAH Exhibit A):



EXHIBIT A

55. The DOAH Settlement Agreement requires that the asphalt apron be poured in the red striped area identified in DOAH Exhibit A, that the asphalt apron "shall extend from the outer edge of the white parking stripe that is

identified as Stripe 1" and that Plaintiff Lopez's parking space may not be relocated as part of the work.

56. Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO initially complied with Sections 2.A.1 and 2.A.2 of the DOAH Settlement Agreement by making the changes reflected in the inset photograph which is an accurate representation of the parking area in front of Plaintiff Lopez's home as of December 19, 2024:



57. Section 2.B of the DOAH Settlement Agreement provides that, after completion of the work identified in 2.A, Defendants "will not remove, alter, or damage the New Asphalt Apron…or Plaintiff Lopez's parking space" without Plaintiff's written consent.

58. However, Defendants VILLAS ASSOCIATION, PRIETO, and
ESCRIBANO altered the area in front of Plaintiff's home in violation of the
DOAH Settlement Agreement by adding sod and a tree and relocating
Plaintiff Lopez's parking space further from his front door and to an area
immediately in front of a concrete pole. The inset photographs are an
accurate representation of the area in front of Plaintiff Lopez's home as of
December 19, 2024:

 

59. Section 2.A.4 of the Settlement Agreement requires that Defendants
"[p]urchase this ramp (https://a.co/d/7Xft1Mv) and have it installed by a
licensed contractor where the New Asphalt Apron meets the tiled patio. The
area for installation of the ramp is identified on…[DOAH] Exhibit A. The
ramp must be affixed to the patio."

60. Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO did not comply with section 2.A.4 of the DOAH Settlement Agreement.

61. Instead, Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO installed an uneven lump of asphalt that was not flush with the tiled patio in front of Plaintiff Lopez's home.

62. The inset photographs are accurate representations of the asphalt "ramp" installed in front of Plaintiff Lopez's home as of August 16, 2024:





63. After the execution of the DOAH Settlement Agreement, Defendants VILLAS ASSOCIATION, PRIETO, ESCRIBANO and VTE mounted a campaign of retaliation and harassment against Plaintiff Lopez.

64. After the execution of the DOAH Settlement Agreement, Defendants VILLAS ASSOCIATION, VTE, PRIETO, and ESCRIBANO:

    a. Revoked Plaintiff's parking decals;

    b. Threatened and attempted to tow his cars which had, prior to the settlement, been parked at the subject property without incident;

    c. Asserted that Plaintiff Lopez could no longer keep his 4 cars on the property and would only be allowed to keep 2 cars; and

    d. Demanded that Plaintiff Lopez complete a series of forms to seek a "certificate of approval" for residency from the Board based on a

pretextual "discovery" that Plaintiff Lopez was no longer an owner of Unit 2408 as he sold his unit to his son in 2006.

65. As a result of Defendants' actions, including their repeated threats to tow Plaintiff's car, Plaintiff has had to repeatedly move his cars from the property which has caused great inconvenience and anxiety and resulted in him missing and canceling necessary medical appointments. Plaintiff Lopez has determined that he must move from the subject property to escape the retaliation and harassment he continues to suffer.

66. At all times relevant to the complaint, Defendant VILLAS ASSOCIATION, VTE, PRIETO, and ESCRIBANO controlled the operations and policies of the subject property and as such, Defendants are jointly and severally liable for the harms caused to Plaintiff Lopez by the discrimination described in this complaint.

67. At all times relevant, Defendants VILLAS ASSOCIATION, VTE, PRIETO, and ESCRIBANO were each the agent, partner, joint venturer, employee and/or representative of each other and were acting within the scope of such agency, partnership, joint venture and/or employment in taking all of the actions described in this complaint that are the proximate cause of Plaintiff Lopez's injuries.

68. At all times relevant, all named Defendants had a community of interest in the objects or purposes accomplished by the joint venture as each of the Defendants receive remuneration, compensation, insurance, indemnification, or protection from insurance, tax and other financial liabilities in connection with their acts described in this complaint.

69. At all times relevant, all Defendants jointly controlled or had the right to control the operation and management of the subject property.

70. At all times relevant, all Defendants owned, managed, operated and/or controlled the subject property directly or as agents of one another.

71. All Defendants as well as their agents, associates, principals and owners, each had the right and authority to bind the other in the business of VILLAS ASSOCIATION as described in this complaint.

72. While engaged in the conduct alleged in this complaint, each Defendant acted with the express or implied knowledge, consent, authorization, approval and/or ratification of the other Defendants.

73. All Defendants as well as their agents, associates, principals and owners, have the right to share in the profits and the duty to share in any losses sustained by the joint venture.

74. As a result of the above-described acts and conduct, Plaintiff Lopez's housing was made unavailable, he was subject to discriminatory terms and

conditions, was subject to a discriminatory statement, and was subject to unlawful interference, coercion and intimidation all on account of disability and his having exercised his right to file and prosecute an administrative complaint for housing discrimination.

75. All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT 1 – DEFENDANTS VILLAS ASSOCIATION, PRIETO and ESCRIBANO
## BREACH OF CONTRACT

76. Plaintiff Lopez repeats paragraphs 6 through 75 above as if fully set forth herein.

77. On May 20, 2024, Plaintiff Lopez filed a Petition for Relief with the Division of Administrative Hearings (DOAH) (Case No. 24-001925) against Defendants VILLAS ASSOCIATION, PRIETO and ESCRIBANO as well as Exclusive Management, seeking relief from their discriminatory housing practices.

78. A settlement (DOAH Settlement Agreement) was reached through the DOAH alternative dispute resolution process and was signed by VILLAS ASSOCIATION, PRIETO, and ESCRIBANO. *See* Exhibit D.

79. The DOAH Settlement Agreement was a binding contract between Plaintiff Lopez and Defendants VILLAS ASSOCIATION, PRIETO and ESCRIBANO.

80. Plaintiff Lopez released Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO from liability as described in paragraph F of the DOAH Settlement Agreement and this release of liability was Plaintiff's only obligation pursuant to the DOAH Settlement Agreement.

81. Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO were obligated to carry out the acts described in detail in paragraphs 2A, 2B and 2D of the DOAH Settlement Agreement.

82. Defendants VILLAS ASSOCIATION, PRIETO, and ESCRIBANO have wholly failed to comply with the settlement agreement including by:

   a. Failing to purchase or install the ramp required by 2.A.4 of the DOAH Settlement Agreement;

   b. Removing and altering Plaintiff Lopez's parking space as prohibited by 2.B of the DOAH Settlement Agreement; and

   c. Failing to adopt a reasonable accommodation policy and forms that comply with 2.D of the Settlement Agreement.

83. Plaintiff Lopez has been damaged by the breach of the Settlement Agreement.

## COUNT 2 – ALL DEFENDANTS
## VIOLATION OF THE FEDERAL FAIR HOUSING ACT
## (42 U.S.C. § 3604(f)(1), (2))

84. Plaintiff Lopez realleges and incorporates by reference Paragraphs 6 through 75, inclusive, of this Complaint as if fully set forth herein.

85. The Fair Housing Amendments Act (FHA) defines disability as follows: "1) a physical or mental impairment which substantially limits one or more … major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment...". 42 U.S.C. § 3602(h).

86. Defendants knew, at all times relevant to this action, that Plaintiff Lopez had physical disabilities that impaired his mobility and breathing.

87.  The FHA makes it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any renter because of disability. 42 U.S.C. § 3604(f)(1).

88. Pursuant to the FHA it is also "unlawful to discriminate against any person in the terms, conditions, or privileges of [] rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of" disability. 42 U.S.C.A. § 3604(f)(2).

89. Defendants unlawfully discriminated against Plaintiff Lopez by taking action to make Plaintiff Lopez's dwelling unavailable on account of his

disability by attempting and threatening to revoke his residency privileges including his parking privileges.

90. Defendants, working jointly and severally, imposed discriminatory terms and conditions on Plaintiff Lopez when they revoked his parking permits and demanded provision of forms and Board approval for residency which requirements are not imposed on other residents of 10 years.

91. Plaintiff Lopez sustained injury and has been harmed by Defendants' discriminatory actions.

92. As a result of Defendants' illegal conduct and discriminatory practices, Plaintiff Lopez is an aggrieved person in that he has been deprived of his right to equal housing opportunities, has suffered discrimination on account of his disabilities and has suffered, and continues to suffer, irreparable loss and injury including, but not limited to, emotional distress, anxiety, fear, shame, humiliation and pain.

93. Plaintiff Lopez has had to retain undersigned counsel to deal with the Defendants' discriminatory and threatening behavior and actions and to assist with the protection of his civil rights through this action.

94. Defendants' actions described in this complaint were undertaken by Defendants with reckless and wanton disregard for Plaintiff Lopez's civil rights.

95. Defendants intentionally caused Plaintiff Lopez to suffer harm by applying discriminatory terms, conditions and policies on his residency.

96. Pursuant to Section 3613(c)(1) of the Fair Housing Act, Plaintiff is entitled to a judgment awarding his actual and punitive damages against the Defendants, jointly and severally, and injunctive and declaratory relief.

97. Pursuant to Section 3613(c)(2) of the Fair Housing Act, Plaintiff is entitled to a judgment against Defendants for an amount that pays his costs and reasonable attorney's fees.

**COUNT 3 – ALL DEFENDANTS**
**VIOLATION OF THE FEDERAL FAIR HOUSING ACT**
**(42 U.S.C. § 3617)**

98. Plaintiff Lopez realleges and incorporates by reference Paragraphs 6 through 75, inclusive, of this Complaint as if fully set forth herein.

99. At all times relevant, Plaintiff Lopez was a person with disabilities as that term is defined in the Fair Housing Act.

100. Because of Plaintiff Lopez's assertion of his right to fair housing through the filing and prosecution of an administrative complaint for housing discrimination, Defendants threatened, coerced, and intimidated Plaintiff Lopez and interfered with his right to exercise and enjoyment of his fair housing rights in violation of the Fair Housing Act, 42 U.S.C. §

3617 (the anti-retaliation clause).

101. The anti-retaliation clause of the Fair Housing Act provides Plaintiff protection from retaliatory acts, stating that it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of [them] having exercised or enjoyed...any right granted or protected" by Section 3604 of the Fair Housing Act.

102. The anti-retaliation provision makes clear that to coerce, threaten, or intimidate a person, or to interfere with a person in their exercise, enjoyment of his fair housing rights constitutes a separate and distinct violation of the Fair Housing Act. Retaliatory conduct is unlawful in and of itself.

103. Defendants took aim at Plaintiff Lopez because he enforced his right to fair housing by filing and prosecuting an administrative complaint which prosecution terminated with the issuance of the FCHR's Determination dated April 19, 2024.

104. Defendants intimidated Plaintiff Lopez and interfered with his right to exercise and enjoyment of his fair housing rights, including his rights under 42 U.S.C. § 3604(f)(1) and (f)(2), in direct violation of the Fair Housing Act, 42 U.S.C. § 3617 (the anti-retaliation clause).

105. Defendants retaliated against Plaintiff Lopez in direct response to his

filing and prosecution of the administrative complaint for housing discrimination by, among other things, moving his parking space to a location where it was more difficult to use, making the area in front of his home inaccessible, revoking his parking permits, alleging that he was not approved by the Board to reside at the property, and threatening to and attempting to tow his cars.

106. Defendants' retaliatory conduct was specifically directed against Plaintiff Lopez because he filed and prosecuted a complaint to redress their discrimination against him.

107. By this action, Plaintiff Lopez seeks redress for Defendants' discrimination and retaliation against him that was designed and intended by Defendants to intimidate, coerce and threaten Plaintiff on account of his having exercised his right to fair housing.

108. These retaliatory acts by Defendants directly interfered with Plaintiff's Lopez's ability to enjoy and exercise his nondiscrimination rights under the FHA and Defendants' conduct caused Plaintiff to suffer further and additional damage.

109. As a direct and proximate result of the Defendants' discriminatory and retaliatory acts, omissions, and violations of the Fair Housing Act, Plaintiff Lopez has suffered and continues to suffer damages.

110. The discriminatory actions of Defendants described in the complaint were intentional, willful, reckless, deliberately indifferent to, and taken with disregard for Plaintiff Lopez's civil rights, as an individual with disabilities.

111.  Pursuant to Section 3613(c)(1) of the Fair Housing Act, Plaintiff is entitled to a judgment against Defendants awarding him a monetary judgment against Defendants, jointly and severally, for his actual and punitive damages.

112.  Plaintiff Lopez is also entitled to injunctive and declaratory relief against Defendants' continuing discriminatory and retaliatory conduct.

113.  Pursuant to Section 3613(c)(2) of the Fair Housing Act, Plaintiff is entitled to a judgment against Defendants, jointly and severally, for an amount that pays his costs and reasonable attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Lopez respectfully requests that the Court grant him the following relief:

1. Enter a declaratory judgment finding that the foregoing actions of Defendants violated 42 U.S.C. § 3604(f)(1), (f)(2), (c) and 42 U.S.C. § 3617;

2. Enter a permanent injunction:

    a.  enjoining all Defendants and their directors, officers, agents, and employees from discriminating on the basis of disability;

    b.  directing all Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

    c.  directing all Defendants to post signs at all of their residential rental properties, if any, alerting residents and potential residents to their rights, under the Fair Housing Act;

    d.  directing Defendants VILLAS ASSOCIATION, PRIETO and ESCRIBANO to comply with all terms of the DOAH Settlement Agreement; and

3. Award compensatory damages to Plaintiff Lopez in an amount to be determined by the jury that would fully compensate Plaintiff for injuries caused by the conduct of all Defendants as alleged herein;

4. Award punitive damages to Plaintiff Lopez in an amount to be determined by the jury that would punish all Defendants for the willful, malicious, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

5. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

6. Award such additional or alternative relief as may be just, proper, and
equitable.

## **JURY DEMAND**

Plaintiff Lopez demands a jury trial on all issues which can be heard by jury.

Dated: <u>May 20, 2025</u>

RESPECTFULLY SUBMITTED,

<u>/s/ Katherine Hanson</u>
Katherine Hanson, Esq.
Disability Rights Florida, Inc.
Director
Advocacy, Education and Outreach
Florida Bar No.: 0071933
2473 Care Dr, Suite 200
Tallahassee, FL 32308
800-342-0823 ext 9713
TDD 800-346-4127
Fax 850-488-8640
<u>katherineh@disabilityrightsflorida.org</u>
<u>Pennym@disabilityrightsflorida.org</u>

<u>/s/ Morgan Bergstrom</u>
Disability Rights Florida, Inc.
Staff Attorney
Advocacy, Education and Outreach
Florida Bar No.: 1058931
<u>MorganB@disabilityrightsflorida.org</u>
<u>Pennym@disabilityrightsflorida.org</u>

<u>/s/ Neil Henrichsen</u>
Neil L Henrichsen
Florida Bar No.: 111503
Henrichsen Law Group, PLLC

301 West Bay Street, Suite 1400
Jacksonville, FL 32202
904-381-8183
Fax 904-212-2800
nhenrichsen@hslawyers.com
service@hslawyers.com


By: /s/Katherine Hanson, Esq.
Fla. Bar No.: 0071933